J-E02002-22

2023 PA Super 88

| ELITE CARE, RX, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PREMIER COMP SOLUTIONS, LLC; | : | |
| LAUNDRY OWNERS' MUTUAL | : | |
| LIABILITY INSURANCE | : | No. 1144 WDA 2020 |
| ASSOCIATION; UPMC BENEFIT | : | |
| MANAGEMENT SERVICES, INC. | : | |
| D/B/A UPMC WORK PARTNERS; | : | |
| LACKAWANNA CASUALTY COMPANY; | : | |
| AND BRICK STREET MUTUAL | : | |
| INSURANCE COMPANY | : | |
| | : | |
| | : | |
| APPEAL OF: PREMIER COMP | : | |
| SOLUTIONS, LLC, LAUNDRY | : | |
| OWNERS' MUTUAL LIABILITY | : | |
| INSURANCE ASSOCIATION, | : | |
| LACKAWANNA CASUALTY COMPANY | : | |
| AND BRICK STREET MUTUAL | : | |
| INSURANCE COMPANY | : | |

Appeal from the Order Entered June 5, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-19-005312

BEFORE:  PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

CONCURRING OPINION BY McLAUGHLIN, J.:          **FILED: May 23, 2023**

I respectfully believe that we do not need to consider whether the Commonwealth Court's decision in ***Armour Pharmacy v. Bureau of Workers' Compensation Fee Review Hearing Office***, 206 A.3d 660, 666 (Pa.Cmwlth. 2019) (en banc), was correct. Rather, we can resolve this appeal

under the Supreme Court's recent decision in ***Franczyk v. The Home Depot, Inc.***, --- A.3d ----, 2023 WL 2992700, at \*8 (Pa. Apr. 19, 2023).

In ***Franczyk***, the Court held that whether an injury alleged in a lawsuit is subject to the exclusivity provision of the Workers' Compensation Act ("WCA") turns on whether "the asserted injury . . . is 'intertwined' inextricably with the workplace injury." ***Id.*** at \*8. The plaintiff in ***Franczyk*** worked at a retail store and had been bitten at work by a customer's dog. ***Id.*** at \*1. She sued her employer and her supervisors, alleging they had "negligently allowed the dog owner and witnesses to leave without obtaining identifying information." She claimed that in so doing, they "denied her the opportunity to file a third-party suit against the dog owner." ***Id.***

The Supreme Court found that the WCA's exclusivity provision immunized the defendants from the employee's suit because her claimed injury was "not truly separable" from the work injury. ***Id.*** at \*8. In reaching its decision, the Court drew a contrast between its prior decisions in ***Martin v. Lancaster Battery Co., Inc.***, 606 A.2d 444 (Pa. 1992), and ***Kuney v. PMA Insurance Co.***, 578 A.2d 1285 (Pa. 1990) ("***Kuney II***").

In ***Martin***, an employee sustained extensive exposure to lead at his work. ***Martin***, 606 A.2d at 448. His employer tested employees on a regular basis for lead content in their blood. Over several years, the employer willfully and intentionally withheld test results from him or gave him altered results. ***Id.*** The employer closely monitored lead levels in employees' blood and reported the results to them so that those with elevated levels of lead could

- 2 -

transfer to areas of work where they would not be exposed to lead. ***Id.*** The plaintiff was then diagnosed with chronic lead toxicity, lead neuropathy, and other ailments. ***Id.*** at 446. His condition would have been substantially better if his employer had not engaged in the deception. ***Id.***

The ***Martin*** Court concluded that the claim for the aggravation of the lead toxicity was not subject to the exclusivity provision. The Court found that the claimed injury was separable from the work injury:

> There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards. . . . The aggravation of the [physical] injury arises from and is related to the fraudulent misrepresentation of the employer.

***Id.*** at 448. As the Supreme Court explained in ***Franczyk***, the lawsuit was permissible in ***Martin*** because "the employee was not seeking compensation for the initial exposure but rather for the distinct (and preventable) aggravation of the original injury—an injury unto itself." ***Franczyk***, 2023 WL 2992700, at *7.

In ***Kuney II***, however, the Court did not find the injuries separable. There, the Court framed the issue before it as whether the employer's immunity under the WCA protects its workers' compensation insurer if it allegedly "engaged in fraud and deceit to deprive an injured employee of his workers' compensation benefits." ***Kuney II***, 578 A.2d at 1285. The employee there had sued the employer's insurer for bad faith, claiming he had emotional

distress injuries allegedly distinct from his workplace injury. *See Franczyk*, 2023 WL 2992700, at *8 n.50. The Court pointed out that the WCA provides a remedy of 10% interest for due and unpaid compensation. *Id.* at 1286. Because the employee's claim boiled down to an allegation that "the insurance company wrongfully delayed his receipt of compensation benefits," the Court concluded that "the employee was limited to the remedies provided within the framework of the" WCA. *Id.* at 1287, 1288.

The Court in *Franczyk* also cited this Court's decision in *Santiago v. Pennsylvania National Mutual Casualty Insurance Co.*, 613 A.2d 1235 (Pa.Super. 1992). There, this Court relied on *Kuney II* to hold that the WCA's exclusivity provision barred an employee's suit for an insurer's bad faith in settlement negotiations, as "completely intertwined with the original injury." *Id.* at 1243.

The *Franczyk* Court synthesized these cases and concluded that the employee's "asserted injury" there was likewise "'intertwined' inextricably with the workplace injury." *Franczyk*, 2023 WL 2992700, at *8. The Court explained that allowing the suit would necessitate a "trial within a trial" of the underlying claim against the dog owner, in effect requiring the employer defendants "to litigate precisely the sort of claim that the WCA is supposed to prevent." *Id.* The Court added that the trial court would also likely have to consider the effect of the employer's subrogation right on any recovery in the underlying suit, as well as whether to reduce accordingly any verdict against the employer. *Id.* The Court acknowledged *Martin*, which it said "arguably

softened" **Kuney II**'s holding. **Id.** at *8 n.50. The **Franczyk** Court to pains to clarify, however, that it did not "aim to abrogate **Martin**," adding that it did "not presume to anticipate or foreclose claims arising in future cases that an appellate court finds more like **Martin** than **Kuney II** or this case." **Id.**

Guided by **Franczyk**, I would conclude that this case is "more like **Martin** than **Kuney II**." The injuries here are "truly separable" because in this case we are faced with a lawsuit between strangers to the employment relationship for fraudulent conduct to evade payment of bills. Elite Care has sued for Appellants' failure to pay for medications that patients/employees undisputedly received, by alleged use of a fraudulent scheme. The suit is not for the unpaid bills themselves, "but rather for the distinct (and preventable) aggravation of the original injury"—the alleged fraudulent scheme to avoid paying the bills.

Furthermore, **Franczyk**'s concerns about the employer becoming embroiled in the sort of litigation the exclusivity provision seeks to prevent will not occur here. No "trial within a trial" will be necessary, the insurer's subrogation rights will not come into play, and nothing will draw the employer into the litigation. I would affirm on the foregoing basis and respectfully concur.

Murray, J. joins this Concurring Opinion.